# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | |
|---|---|
| WILDA LOZA, NELLY ELISKA RAVELO LLOSSAS, FELIX ROBERTO ROMANO, | )<br>)<br>)<br>) |
| Plaintiff(s), | ) CIVIL ACTION NO.: 1:20-cv-21114 |
| v. | )<br>)<br>) |
| KIMPTON HOTEL & RESTAURANT GROUP, LLC, D/B/A EPIC HOTEL | )<br>)<br>) |
| Defendant(s). | ) |

## COMPLAINT and DEMAND FOR JURY TRIAL

Plaintiffs, Wilda Loza ("Ms. Loza"), Nelly Eliska Ravelo Llossas ("Ms. Ravelo"), Felix Roberto Romano ("Mr. Romano") (collectively referred to as "Plaintiffs"), hereby bring this Complaint and Demand for Jury Trial against Defendant, Kimpton Hotel & Restaurant Group, LLC, d/b/a Epic Hotel ("Defendant" or "Kimpton"), and allege as follows:

## NATURE OF THE CLAIM

1. This action seeks compensatory damages, punitive damages, declaratory relief, injunctive relief, and any other permissible legal damages for Defendant's violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, *et. seq.* ("Title VII").

2. Plaintiffs allege that Defendant unlawfully discriminated against them on the basis of their national origin and/or race, harassed them on the basis of their national origin and/or race, failed to pay Plaintiffs adequate compensation or give Plaintiffs opportunities to receive promotions on the basis of national origin and/or race, and retaliated against Plaintiffs after they made complaints to human resources and the Equal Employment Opportunity Commission

("EEOC"). Moreover, Defendant also unlawfully discriminated against Ms. Ravelo and Ms. Loza on the basis of their sex/gender.

## THE PARTIES

3. Ms. Loza is a Hispanic female of Bolivian origin, who has been employed by Defendant since approximately February 2013.

4. Ms. Ravelo is a Hispanic female of Cuban origin, who has been employed by Defendant since approximately April 2009.

5. Mr. Romano is a Hispanic male of Bolivian origin, who has been employed by Defendant as a banquet server since approximately December 2008.

6. Defendant, Kimpton Hotel & Restaurant Group, LLC, d/b/a Epic Hotel is a national hotel chain with its principal headquarters based in San Francisco, California. Kimpton operates 65 hotels with over 8,000 employees nationwide and revenues of over one billion dollars.

7. At all times material hereto, Kimpton had at least fifteen employees, and was therefore an "employer" within the meaning of Title VII.

## JURISDICTION and VENUE

8. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. § 1331, as it arises under questions involving Title VII. This Court also has diversity jurisdiction under 28 U.S.C. §1332(a) insofar as the amount in controversy exceeds $75,000, exclusive of interests and costs, and Defendant is a foreign corporation doing business in the State of Florida while Plaintiffs are Florida residents.

9. This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendant, pursuant to Florida Statutes §48.193(1)(a)(1), (2), and (6), because it conducts substantial business in this District,

some of the actions giving rise to the Complaint took place in this District, and all of Plaintiffs' claims arise out of Defendant's operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District and the Defendant has caused harm to Plaintiffs residing in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiffs timely filed charges of discrimination with the EEOC alleging continuing discrimination by Defendant and were subsequently issued Notices of Right to Sue dated January 14, 2020, and January 17, 2020.

12. Plaintiffs timely filed this action within the 90 day period contained in the Notices of Right to Sue and have otherwise complied with all conditions precedent to filing suit.

## FACTUAL ALLEGATIONS

13. Ms. Loza was originally hired by Defendant on or about February 2013, as a banquet captain at the Epic Hotel located at 270 Biscayne Boulevard Way, Miami, FL 33131 ("Epic Hotel").

14. Ms. Loza currently holds the same position with Defendant and works as a manager in the Epic Hotel's restaurant.

15. Ms. Ravelo was originally hired by Defendant on or about April 2009, as a banquet server at the Epic Hotel.

16. Ms. Ravelo rose through the ranks in order to eventually become a banquet captain and occasionally as of a supervisor at the restaurant in the Epic Hotel.

17. Mr. Romano was originally hired by Defendant as a banquet server on or about December 2008.

18. Mr. Romano was eventually given a promotion to banquet captain at the Epic Hotel.

19. One of Kimpton's employees and/or agents, Banquet Director, Michael Poehlman ("Mr. Poehlman"), has made several disgusting, racist, cultural insensitive, and wholly inappropriate comments to Plaintiffs and several other Kimpton employees.

20. Ever since Mr. Poehlman was hired by Defendant on or about the end of 2017 or beginning of 2018, Plaintiffs have suffered constant emotional and mental abuse by Mr. Poehlman on account of their national origin and race.

21. Early on when Mr. Poehlman's employment at the Epic Hotel first commenced, he saw Plaintiffs and several other Hispanic employees eating in the kitchen after they had finished a long and arduous banquet service.

22. Defendant's employees that work in the banquet department are often forced to work long shifts, sometimes an entire eight hours, before they are given an opportunity to take a break for lunch or to use the restroom. This in turn forces many of Defendant's employees working in banquet, like Plaintiffs, to hurriedly eat whatever food is available whenever they finish the prior banquet service or immediately before the begin the next banquet service.

23. Upon seeing Plaintiffs and other Hispanic employees hurriedly eating before the next service, Mr. Poehlman sarcastically exclaimed, "Oh Look God Bless America."

24. This of course made Plaintiffs and the other Hispanic employees feel hurt and ashamed on account of their national origin and for taking a break to eat lunch. This behavior by Mr. Poehlman not only violates Title VII, but state and federal employment laws requiring Defendant to allow its employees to take breaks for lunch, to use the restroom, etc.

25. Defendant is liable for the acts and conduct of its employees and/or agents towards its employees, such as Plaintiffs.

26. On numerous specific instances Mr. Poehlman has singled out Paintiffs or made derogatory comments/complaints about Plaintiffs race, gender, and/or national origin.

27. As a result of these interactions, Plaintiffs made numerous complaints to Defendant's human resources department regarding Mr. Poehlman's disparate treatment of them on account of their, race, gender, and/or national origin. However, no action was taken by Defendant.

28. For example, on or about the beginning of 2018 Mr. Poehlman singled out Ms. Ravelo and chastised her in front of several other employees making several remarks regarding whether Ms. Ravelo was a banquet employee or a restaurant employee.

29. Even though Ms. Ravelo was working as a restaurant supervisor on the day in question, Mr. Poehlman continued to castigate and scold Ms. Ravelo in front of several other employees about not doing her job.

30. While taking the time to specifically single out Ms. Ravelo, Mr. Poehlman did not admonish any other white, United States born, Kimpton employees regarding their job performance.

31. Mr. Poehlman's derogatory comments were made toward Ms. Ravelo due to her race, national origin, and/or gender.

32. Ms. Ravelo, along with Mr. Romano, attempted to privately speak with Mr. Poehlman regarding his derogatory and disparate treatment of Hispanic employees not from the United States. However, Ms. Ravelo and Mr. Romano's were rebuffed.

33. In fact, Mr. Poehlman made further disparaging and inappropriate remarks in response to Ms. Ravelo's attempts to let him know that his comments were hurtful and unacceptable.

34. Being left with no other choice, in 2018 Ms. Ravelo submitted a written complaint to Defendant's human resources employee, Denise Chamorro ("Ms. Chamorro"), regarding Mr. Poehlman's inappropriate comments.

35. Quite shockingly, Ms. Chamorro never reprimanded Mr. Poehlman, nor did she instruct that he undergo sensitivity training or some other remedial measure.

36. Mr. Poehlman has also made several demeaning, inappropriate, and derogatory comments to Ms. Loza and Mr. Romano.

37. For example, on numerous occasions in 2018 Mr. Poehlman would directly refer to people of Hispanic origin as "ranchitos" or "these people".

38. Plaintiffs and several other Kimpton employees often heard Mr. Poehlman make these kinds of remarks when referring to Hispanic employees.

39. The comments and abuse became so much for Ms. Loza that in May 2018 she also was forced to make a written complaint to Ms. Chamorro regarding Mr. Poehlman's behavior at work.

40. Ms. Loza specifically stated to Ms. Chamorro that Mr. Poehlman was creating a hostile work environment for herself and other Kimpton employees.

41. Since no actions were ever taken by Ms. Chamorro, Plaintiffs hoped they could bring these issues regarding Mr. Poehlman before senior management.

42. This opportunity presented itself on or about July 13, 2018, when Kimpton had a Fireside Chat (the "Fireside Chat") where its employees could speak freely about management and discuss work related issues.

43. Human Resources Director, Denise Valdez ("Ms. Valdez"), Beverage Director Frank Pettito ("Mr. Pettito"), and other Kimpton senior management attended the Fireside Chat.

44. During the Fireside Chat, many Kimpton employees made specific complaints about the inappropriate, racist, and discriminatory comments being made by Mr. Poehlman

45. Some employees even stated that they felt harassed or were suffering severe anxiety due to Mr. Poehlman's comments and treatment.

46. Despite these complaints by Defendant's employees, no action was taken against Mr. Poehlman throughout 2018.

47. Due to Defendant's failure to take any action against Mr Poehlman, he continued to make derogatory and otherwise inappropriate comments throughout Plaintiffs' employment at the Epic Hotel.

48. Another example occurred in the summer of 2019 after a long shift, Ms. Ravelo had been performing some work outside when she briefly removed her jacket.

49. Upon seeing this, Mr. Poehlman made inappropriate and degrading comments to Ms. Ravelo over her appearance and her lack of proper uniform.

50. Kimpton does not provide its employees that work banquet with any uniforms.

51. Mr. Poehlman scolded Ms. Ravelo regarding her uniform solely due to her race, national origin, and/or sex.

52. Ms. Ravelo reported this to the human resources department, but again no action was taken against Mr. Poehlman.

53. Feeling that her pleas for help to human resources were going unanswered, Ms. Ravelo decided to escalate the matter to the Epic Hotel's senior management.

54. Ms. Ravelo made further complaints regarding Mr. Poehlman to Erica Nelson, General Manager at the Epic Hotel, and Ana Hayes, Epic Hotel Manager.

55. Yet again, no action was taken against Mr. Poehlman.

56. Shortly after the reporting of Mr. Poehlman's breach of proper work-place behavior, Plaintiffs suffered a national-origin based retaliation campaign brought about by Kimpton's employees and/or agents.

57. Plaintiffs were given numerous write-ups and other negative remarks to their employee files as a result of unjustified complaints and fabrications made by Kimpton's managers, employees, and/or agents.

58. These write-ups were made in retaliation for Plaintiffs complaints to human resources regarding Kimpton's discrimination against Plaintiffs on account of their race, national origin and/or gender.

59. One specific example can be seen in September 2019, shortly after Ms. Ravelo had made complaints to human resources regarding Mr. Poehlman, she received an employee counseling notice regarding her "failure to perform."

60. This specific employee counseling notice, like all the other notices Plaintiffs received after making complaints regarding Mr. Poehlman, is completely untrue.

61. Ms. Loza was also not given the opportunity to work in the banquet department despite making numerous requests to Defendant, and being initially hired to work exclusively in the banquet department.

62. Ms. Loza would make significantly more money in her role at the banquet department as opposed to working as a supervisor in the Epic Hotel's restaurant.

63. Ms. Loza was punished by Mr. Poehlman and Defendant, specifically due to her numerous complaints to human resources and on account of her race, national origin, and gender.

64. Kimpton's managerial employees continued to single out and punish Plaintiffs economically on account of their race, national origin, and/or gender by cutting their hours, earning less shifts, or placing Plaintiffs in lower paying roles.

65. These comments and actions by Defendant's agents and/or employees were not made for any alleged business purpose, but solely on account of Plaintiffs' race, national origin, and/or sex.

66. Eventually Mr. Poehlman was removed from the Epic Hotel.

67. Unfortunately, the disparate and unfair treatment of Plaintiffs on account of their national origin, race, and/or gender did not stop.

68. Plaintiffs are still always passed over or simply not given the same opportunities as other employees on account of their national origin, race, and/or sex.

69. Plaintiffs were denied these promotions, raises, mor hours, better shifts, etc. on account of their national origin, race, and/or sex, in direction violation of Title VII by their employer, Kimpton.

70. In fact, the denial of these opportunities was made by Kimpton as retaliation for the Plaintiffs' complaints to human resources regarding inappropriate comments and unfair treatment by Epic Hotel's employees and agents about Plaintiffs' national origin, race, and/or gender

# CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
National Origin Based Discrimination in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a)

71. Plaintiffs incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 70, above.

72. Section 703 of Title VII, 42 U.S.C. § 2000e-2, prohibits employment practices that discriminate against persons on the basis of their national origin.

73. As alleged above, Plaintiffs were discriminated against by Defendant on the basis of national origin.

74. Defendant deprived Plaintiffs of employment opportunities on the basis of their national origin.

75. As a direct, legal and proximate result of the discrimination, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

76. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on his national origin.

77. As such, Plaintiffs further seek compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

78. Plaintiffs are entitled to the reasonable attorneys' fees and costs incurred in the prosecution of this action.

## SECOND CLAIM FOR RELIEF
National Origin Based Discrimination (Hostile Work Environment) in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a)

79. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 70, above.

80. Plaintiffs were subjected to harassment and discriminatory comments by Defendant's agents and/or employees, because of their national origin.

81. Defendant's agents' and employees' conduct was not welcomed by Plaintiffs.

82. Defendant's agents' and employees' conduct was undertaken because of Plaintiffs' national origin.

83. The conduct was so severe or pervasive that reasonable persons in Plaintiffs' position would find their work environment to be hostile or abusive.

84. Plaintiffs believed their work environment to be hostile or abusive as a result of the conduct of Defendant's agents and employees.

85. Management level employees of the Defendant knew, or should have known, of the abusive conduct.

86. The harassment of Plaintiffs was so pervasive and open that a reasonable employer would have had to have been aware of it. Indeed, management level employees were themselves complicit in the abusive conduct.

87. Defendant did not exercise reasonable care to prevent harassment in the workplace on the basis of national origin and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

88. As a direct, legal and proximate result of the discrimination, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in

an amount to be proven at trial.

89. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on national origin.

90. As such, Plaintiff further seek compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

91. Plaintiffs are entitled to the reasonable attorneys' fees and costs incurred in the prosecution of this action.

**THIRD CLAIM FOR RELIEF**
Race Based Discrimination in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a)

92. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 70, above.

93. Section 703 of Title VII, 42 U.S.C. § 2000e-2, prohibits employment practices that discriminate against persons on the basis of their race.

94. As alleged above, Plaintiffs were discriminated against by Defendant on the basis of race.

95. Defendant deprived Plaintiffs of employment opportunities on the basis of their race.

96. As a direct, legal and proximate result of the discrimination, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

97. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on their race.

98. As such, Plaintiffs further seek compensatory and punitive damages and all other

injunctive, declaratory, and monetary relief available for discrimination at trial.

99. Plaintiffs are entitled to their reasonable attorneys' fees and costs incurred in the prosecution of this action.

**FOURTH CLAIM FOR RELIEF**
Race Based Discrimination (Hostile Work Environment) in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a)

100. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 70, above.

101. Plaintiffs were subjected to harassment and discriminatory comments by Defendant's agents and employees, including Mr. Poehlman, because of their race.

102. Defendant's agents' and employees' conduct was not welcomed by Plaintiffs.

103. Defendant's agents' and employees' conduct was undertaken because of Plaintiffs' race.

104. The conduct was so severe or pervasive that reasonable persons in Plaintiffs' positions would find their work environment to be hostile or abusive.

105. Plaintiffs believed their work environment to be hostile or abusive as a result of the conduct of Defendant's agents and employees.

106. Management level employees of the Defendant knew, or should have known, of the abusive conduct.

107. Plaintiffs provided management level personnel and human resources with information sufficient to raise a probability of race based harassment in the mind of a reasonable employer.

108. Moreover, the harassment was so pervasive and open that a reasonable employer would have had to have been aware of it. Indeed, management level employees were themselves

complicit in the abusive conduct.

109. Defendant did not exercise reasonable care to prevent harassment in the workplace on the basis of race and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

110. As a direct, legal and proximate result of the discrimination, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

111. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on race.

112. As such, Plaintiffs further seek compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

113. Plaintiffs are entitled to their reasonable attorneys' fees and costs incurred in the prosecution of this action.

**FIFTH CLAIM FOR RELIEF**
Sex Based Discrimination in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a), as to Ms. Ravelo and Ms. Loza

114. Ms. Loza and Ms. Ravelo incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 70, above.

115. Title VII of the Civil Rights Act of 1964, *as amended*, makes it unlawful for an employer, "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely

affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

116. Defendants discriminated against Ms. Loza and Ms. Ravelo by treating them differently from their male coworkers, including in employment opportunities, unequal wages, and compensation, because of their sex.

117. Ms. Loza and Ms. Ravelo's sex was the determining factor and/or a motivating factor in Defendant's actions.

118. As a direct, legal and proximate result of the discrimination, Ms. Loza and Ms. Ravelo have sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendant's actions, Ms. Loza and Ms. Ravelo have suffered emotional distress, resulting in damages in an amount to be proven at trial.

119. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Ms. Loza and Ms. Ravelo's right to be free from discrimination based on sex.

120. As such, Ms. Loza and Ms. Ravelo further seek compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

121. Ms. Loza and Ms. Ravelo are entitled to their reasonable attorneys' fees and costs incurred in the prosecution of this action.

### SIXTH CLAIM FOR RELIEF
Sex Based Discrimination (Hostile Work Environment) in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a) as to Ms. Loza and Ms. Ravelo

122. Ms. Loza and Ms. Ravelo incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 70, above.

123. Ms. Loza and Ms. Ravelo were subjected to harassment, discriminatory comments,

other unfair treatment by Defendant's agents and employees, including Mr. Poehlman, because of their sex.

123. [sic] 

124. Defendant's agents' and employees' conduct was not welcomed by Ms. Loza and Ms. Ravelo.

125. Defendant's agents' and employees' conduct was undertaken because of Ms. Loza and Ms. Ravelo's sex, female.

126. The conduct was so severe or pervasive that reasonable persons in Ms. Loza and Ms. Ravelo's positions would find their work environment to be hostile or abusive.

127. Ms. Loza and Ms. Ravelo believed their work environment to be hostile or abusive as a result of the conduct of Defendant's agents and employees.

128. Management level employees of the Defendant knew, or should have known, of the abusive conduct.

129. Ms. Loza and Ms. Ravelo provided management level personnel and human resources with information sufficient to raise a probability of sex based harassment in the mind of a reasonable employer.

130. Moreover, the harassment was so pervasive and open that a reasonable employer would have had to have been aware of it. Indeed, management level employees were themselves complicit in the abusive conduct.

131. Defendant did not exercise reasonable care to prevent harassment in the workplace on the basis of sex and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

132. As a direct, legal and proximate result of the discrimination, Ms. Loza and Ms. Ravelo have sustained, and will continue to sustain, economic and emotional injuries, resulting in

damages in an amount to be proven at trial.

133. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Ms. Loza and Ms. Ravelo's right to be free from discrimination based on sex.

134. As such, Ms. Loza and Ms. Ravelo further seek compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

135. Ms. Loza and Ms. Ravelo are entitled to their reasonable attorneys' fees and costs incurred in the prosecution of this action

### SEVENTH CLAIM FOR RELIEF
Retaliation in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-3(a)

136. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 70, above.

137. Section 704(a) of Title VII of the Civil Rights Act of 1964, *as amended*, prohibits employers from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

138. Plaintiffs made complaints to Defendant's agents and employees opposing Defendant's unlawful, discriminatory employment practices based on national origin.

139. As a result of Plaintiffs' complaints, Defendant's agents and employees took materially adverse actions against Plaintiffs.

140. Defendant's adverse actions constituted retaliatory workplace harassment.

141. Defendant's retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

142. As a direct, legal and proximate result of Defendant's retaliation, Plaintiffs have

sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

143. As such, Plaintiffs further seek compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

144. Plaintiffs are entitled to the reasonable attorneys' fees and costs incurred in the prosecution of this action.

## **DECLARATORY RELIEF ALLEGATIONS**

145. A present and actual controversy exists between Plaintiffs and Defendant concerning their rights and respective duties. Plaintiffs contend that Defendant violated his rights under Title VII. Plaintiffs are informed and believe and thereon allege that the Defendant will deny these allegations. Declaratory relief is therefore necessary and appropriate.

146. Plaintiffs seek a judicial declaration of the rights and duties of the respective parties.

## **INJUNCTIVE RELIEF ALLEGATIONS**

147. No plain, adequate, or complete remedy at law is available to Plaintiffs to redress the wrongs addressed herein.

148. If this Court does not grant the injunctive relief sought herein, Plaintiffs will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs prays for relief as follows:

    A.    For a declaration that Defendant's actions, policies, and practices as alleged herein are unlawful;

    B.    For lost wages and all other compensation denied or lost to Plaintiffs by reason of Defendant's unlawful actions, in an amount to be proven at trial;

C. For compensatory damages for Plaintiffs, including but not limited to, emotional pain and suffering, in an amount to be proven at trial;

D. For punitive damages in an amount to be determined at trial;

E. For liquidated damages;

F. For interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

G. For an order enjoining Defendant from engaging in the unlawful acts complained of herein;

H. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 2000e-5(k), and other laws; and

I. For such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.

Dated: March 13, 2020.

Respectfully submitted,

**THE G LAW GROUP, P.A.**
*Attorneys for the Plaintiffs*
350 Lincoln Road, Suite 2051B
Miami Beach, FL 33139
Tel: (305) 709-8877
Fax: (786) 460-8333
sgenadiev@theglawgroup.com

By: */s/ Simeon G. Genadiev*
**SIMEON G. GENADIEV, ESQ.**
Florida Bar No.: 100918